Greg Nylen [SBN 151129]
Kevin Abbott [SBN 281312]
LOBB & PLEWE, LLP
4160 Temescal Canyon Rd., Suite 202
Corona, CA  92883
Telephone: (951) 788-9410
Facsimile: (951) 788-0766
E: gnylen@lobbplewe.com
    kabbott@lobbplewe.com

James Donoian (pro hac vice pending)
Aya Cieslak-Tochigi (pro hac vice pending)
McCarter & English, LLP
825 Eighth Avenue, 31st Floor
New York, NY 10019
P:  212-609-6817
E:  jdonoian@mccarter.com
    acieslaktochigi@mccarter.com

Keith Toms (pro hac vice pending)
Quincy Kayton (pro hac vice pending)
McCarter & English, LLP
265 Franklin St.
Boston, MA 02140
P:  617-449-6591
E:  ktoms@mccarter.com
E:  qkayton@mccarter.com

Aaron Y. Silverstein (pro hac vice pending)
Saunders & Silverstein LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
asilverstein@sandsip.com
Telephone: 978-463-9100

Attorneys for Plaintiffs, VANS, INC. and VF OUTDOOR, LLC

[caption continued on next page]

1
COMPLAINT

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| VANS, INC.; VF OUTDOOR, LLC, | ) Case No.: **8:18-cv-2258** |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) **COMPLAINT** |
| | ) **AND DEMAND FOR JURY TRIAL** |
| TARGET CORPORATION ; | ) |
| FARYLROBIN, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**COMPLAINT**

Plaintiff Vans, Inc., and VF Outdoor, LLC (collectively, "Vans") by and through their counsel, brings this action against defendants Target Corporation ("Target") and Farylrobin LLC ("Farylrobin") (collectively, "Defendants"). As grounds for this complaint, Vans alleges the following:

**NATURE OF THE ACTION**

1.     This is an action for trademark infringement and unfair competition arising under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.* and under the common law and deceptive and unfair trademark practices laws of the State of California, California Business and Professions Code §17200, related

2
COMPLAINT

to Defendants' sale of the "Camella Lace-Up Sneaker" ("Infringing Product"), which intentionally and willfully copies the protectable trade dress and trademarks of Vans' iconic Old Skool shoe ("Old Skool Shoe") and is likely to cause confusion in the marketplace.  Indeed, consumers on Target's own website refer to the Infringing Product, depicted below, as "fake Vans," clearly indicating an express association with, and a likelihood of confusion with, Vans' products.

**Vans' Old Skool Shoe**            **Defendants' Infringing Product**

   

2.     Moreover, upon information and belief, Defendants' infringement was motivated not only by the extreme popularity of Vans' Old Skool Shoe — which is a top-selling lifestyle shoe among Defendants' target customers of millennial and Gen-Z women — but also by a desire to misappropriate Vans' reputation and cachet to lend unwarranted and instant credibility to Target's Wild Fable product line upon its launch.

3.     Vans has a long history of, and sterling reputation for, being authentic and connected to pop-culture, street culture, and youth culture, which are the stated goals for Target's Wild Fable line.  As such, Defendants should not be permitted to associate themselves with Vans' history and reputation by selling shoes that are likely to cause confusion with the trade dress and trademarks of Vans' Old Skool Shoe.

660263.doc

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(a), and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5.     This Court has personal jurisdiction over defendant Target because it is engaged in substantial and regular business in the State of California and in the Central District of California, including by selling its goods through retail stores located in the Central District of California. Additionally, defendant Target's acts have caused injury to plaintiff Vans within the State of California and the Central District of California.

6.     This Court has personal jurisdiction over defendant Farylrobin because it is engaged in substantial and regular business in the State of California and in the Central District of California. Additionally, defendant Farylrobin's acts have caused injury to plaintiff Vans within this District by supplying its infringing goods to defendant Target for sale in the State of California and in the Central District of California.

7.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction within this district and/or because a substantial part of the events giving rise to these claims occurred within this judicial district.

## THE PARTIES

8.     Vans, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1588 South Coast Drive, Costa Mesa, California 92626.

660263.doc

9.      VF Outdoor, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 2701 Harbor Bay Parkway, Alameda, California 94502.

10.     Upon information and belief, defendant Target is a corporation organized and existing under the laws of Minnesota, having its principal place of business at 1000 Nicollet Mall, Minneapolis, MN, 55403.  Upon information and belief, Target regularly transacts business in the United States and in the State of California.

11.     Upon information and belief, defendant Farylrobin is a limited liability company organized and existing under the laws of New York, having a principal place of business at 2011 Park Avenue South, Suite 1408, New York, NY, 10003-1523.  Upon information and belief, Farylrobin regularly transacts business in the United States and in the State of California.

## FACTS

### *Vans and Vans' Business*

12.     Founded in 1966 in Anaheim, California, by Van Doren brothers Paul and Jim, along with partners Gordon Lee and Serge Delia, Vans has grown from humble beginnings to become one of the most well-known and groundbreaking footwear, apparel, and accessory companies in the world.

13.     Vans' products are widely recognized and extremely popular. The company has achieved recognition as ranking among the world's greatest and most recognizable brands. Vans' iconic trademarks and distinctive trade dress related to its classic shoe designs have been consistently used for decades and are known throughout the world to indicate the source of Vans' high quality products. Over the past 40 years, tens of millions of pairs of shoes with Vans' distinctive trademarks and trade dress have been sold in the United States.

660263.doc

14.    Vans' products have amassed significant goodwill and are continuing to grow in popularity.  Indeed, "Vans is the No. 3 'top trend' cited among teens" (Piper Jaffray *Taking Stock With Teens Survey* – Fall 2018).  The brand is also recognized as the top-ranked footwear brand for upper-income females in the United States (Piper Jaffray *Taking Stock With Teens Survey* – Fall 2018).

15.    Much of Vans' success is owed to its enduring reputation for creating lasting and durable footwear products without sacrificing comfort or style, and, perhaps just as important, its longstanding and consistent use of its trademarks and its trade dress. This consistent use of distinctive trademarks and trade dress, combined with Vans' peerless reputation for lifestyle and active shoes, has been instrumental in Vans' lasting popularity.

### *Vans' Old Skool Shoe*

16.    One of Vans' most popular shoe designs, and indeed one of the most iconic shoe designs in history, is the Vans Old Skool Shoe, depicted below, which was introduced in 1977. Few shoes have remained as consistently popular or are as instantly recognizable as the Old Skool Shoe.



*Vans Old Skool Shoe*

6
COMPLAINT

660263.doc

17.    The Old Skool Shoe design features the iconic "Side Stripe" trademark, highlighted below. Originally known as the "jazz stripe," this highly distinctive design element has become the unmistakable hallmark of the Vans brand and is the subject of three United States trademark registrations (see Paragraphs 27-29) (the "Side Stripe Trademark"). The Side Stripe Trademark's prominent placement and often-contrasted color make Vans' shoes immediately recognizable to consumers even at far-off distances.



*Vans Side Stripe Trademark*

18.    Since 1977, The Old Skool Shoe has continuously featured a combination of distinctive source-identifying elements, including: (1) the Vans Side Stripe Trademark, in contrasting color to the shoe upper; (2) a white rubberized midsole; (3) a contrast line around the top edge of the midsole; (4) a textured toe box outer around the front of the white midsole; and (5) visible stitching, in contrasting color, including where the lace bracing meets the vamp; which combined form strong enforceable trade dress (the "Old Skool Trade Dress").

19.    Since its release in 1977, tens of millions of pairs of the Old Skool Shoes have been sold in the United States.  The Old Skool Shoe originally gained notoriety as the shoe of choice for skaters and other active sports enthusiasts, and in more recent years, the shoe's popularity has exploded with the general public, including high-profile fashion designers, musicians, and celebrities. On account of

its pop culture popularity, the Old Skool Shoe has been the subject of numerous examples of unsolicited media coverage and featured in publications aimed at a broad selection of the public, including, among others, *Transworld Skateboarding*, *Esquire*, *Complex*, *Business Insider*, *GQ*, *The Wall Street Journal* and *W Magazine*.

20.    The Old Skool Trade Dress is nonfunctional and distinctive, and the public recognizes and understands that the Old Skool Trade Dress distinguishes and identifies genuine Vans brand products.

21.    As a result of Vans' extensive use of the Old Skool Trade Dress, Vans has built up and now owns extremely valuable goodwill that the Old Skool Trade Dress embodies.

22.    The purchasing public has come to immediately and unmistakably associate the Old Skool Trade Dress with Vans.

23.    The enormous popularity of the Old Skool Shoe has resulted in high-profile collaborations with notable designers and fashion houses in the realm of haute couture and street fashion, including brands such as Marc Jacobs, Stüssy, Pendleton, and Supreme, further broadening the appeal of the classic designs.

24.    The Old Skool Shoe has also had a particularly rich history in the music industry, as it is revered by band members in the rock and roll and punk music scenes, in particular for its style and reputation. The Old Skool Shoe's cult status amongst musicians in turn led to the development of Vans' band shoe program, which was responsible for creating Old Skool designs dedicated to legendary music groups like Slayer, Descendents, and Bad Religion, as well as Iron Maiden, Slayer, Bad Brains, and Social Distortion.

25.    Vans also has a rich tradition of associating the Old Skool Shoe and its other products with its signature checkerboard design.  Consumers encountering such a checkerboard design, especially when associated with footwear or accessories sold alongside footwear, are even more likely to associate the products

with Vans. Examples of Van's products featuring the checkerboard design include:

 

 

**The Famous Side Stripe Trademark**

26. Since at least as early as the 1970s, Vans has used the Vans Side Stripe Trademark as a distinctive design element on its footwear. Vans has expended substantial time, money, and other resources in the developing, advertising, and otherwise promoting the Side Stripe Trademark. As a result of these efforts, consumers readily identify merchandise bearing the Side Stripe Trademark as being high quality merchandise emanating from, sponsored by, or approved by Vans. The Side Stripe Trademark has become well-known among consumers and

660263.doc

accordingly should be afforded tremendous strength. Examples of Vans' footwear bearing the Side Stripe Trademark are depicted below.



*Examples of Vans' Side Stripe Trademark on Footwear*

27.    Vans is the owner of the Side Stripe Trademark and corresponding United States Trademark Registration No. 2,177,772, issued on August 4, 1998, for the placement of the Side Stripe Trademark on the Old Skool Shoe design, as depicted below, for "footwear."

10
COMPLAINT



*U.S. Registration No. 2,177,772*

An Affidavit has been filed pursuant to Sections 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable. A copy of the Certificate of Registration for this registration is attached as Exhibit A.

28.    Vans owns United States Trademark Registration No. 2,172,482, issued on July 14, 1998, for the below-depicted shoe design incorporating the Side Stripe Trademark, for "footwear."

*U.S. Registration No. 2,172,482*

An affidavit has been filed pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable.   A copy of the Certificate of Registration for this registration is attached as Exhibit B.

660263.doc

29.    Vans also owns United States Trademark Registration No. 2,170,961, issued July 7, 1998, for the below-depicted shoe design incorporating the Side Stripe Trademark, for "footwear."



*U.S. Trademark Registration No. 2,170,961*

An affidavit has been filed pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and this registration is incontestable.   A copy of the Certificate of Registration for this registration is attached as Exhibit C.

30.    Vans has further strengthened the Side Stripe Trademark by incorporating the mark in many designs across its entire product range. Notably, Vans prominently features the Vans Side Stripe Trademark in connection with apparel products. Vans has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Side Stripe Trademark. As a result of these efforts, consumers readily identify merchandise bearing the Side Stripe Trademark as being of high quality and emanating from, sponsored by, or approved by Vans. Examples of Vans' apparel products bearing the Side Stripe Trademark are depicted below.

660263.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







660263.doc

1
2
3
4
5
6
7
8
9
10
11
12



*Examples of Vans' Side Stripe Trademark on Apparel Products*

13

14   31.   Vans is the owner of the Side Stripe Trademark and corresponding

15  United States Trademark Registration No. 4,442,122, issued on December 13,

16  2013 for "clothing, namely, T-shirts, shirts, sweatshirts, pants, shorts, denims,

17  sweater, jackets, belts, boxers, socks, scarves, underwear and swimwear; headgear,

18  namely, hats, caps and beanies."

19
20
21



22
23
24   *U.S. Registration No. 4,442,122*

25   A copy of the Certificate of Registration for this registration is attached as

26  Exhibit D.

27   32.   As a result of Vans' extensive use of the Side Stripe Trademark, Vans

28  has built up and now owns extremely valuable goodwill embodied in the mark.

14<br>COMPLAINT

33.    The Side Stripe Trademark is a strong source identifier that has is uniquely associated with Vans and genuine Vans brand products.

### *Defendants' Infringing Product*

34.    Upon information and belief, in August 2018, in an effort to "really amp up" its style credentials with young female consumers, Target launched its Wild Fable line as a "way to be more authentic and connect with" its target audience of millennials and Gen-Z shoppers.  Farylrobin supplied Target with products for the Wild Fable line, including the Infringing Product:

**Vans' Old Skool Shoe**

**Defendants' Infringing Product**




35.    Upon information and belief, the Infringing Product is a calculated and intentional infringement of Vans' footwear products bearing the Vans Trademarks and Trade Dress and has been designed to confuse the purchasing public as to source by deliberately incorporating the distinctive elements of the Vans Trademarks and Trade Dress.

36.    In addition to copying the Vans Trademarks and Trade Dress, Defendants also copy additional features of the Old Skool Shoe, which further shows their intent to copy Vans' products and trade on Vans' reputation, including the classic white-on-black color scheme and the overall shape and silhouette.  Copying these features in addition to the Vans Trademarks and Trade Dress also further increases the likelihood that consumers will be confused and will improperly associate the

660263.doc

Infringing Product with Vans and its Trademarks and Trade Dress.

37.    Defendants' further increase the likelihood that consumers will be confused by promoting and selling the Infringing Product alongside goods bearing a checkerboard pattern, which is a signature design element on many authentic VANS products and which is strongly associated with Vans and the Old Skool Shoe.  For example, in the following promotional photograph for the Wild Fable line, the model is holding a checkerboard bag next to the Infringing Product.



38.    Upon information and belief, search results for the term "women's Vans shoes" on the Target website include the Infringing Product.

39.    Target features the Infringing Product prominently on its website and in its marketing of the Wild Fable line, with many of the photographs of Wild Fable apparel showing models wearing the Infringing Product.  For example:

16
COMPLAINT

660263.doc





40.   Upon information and belief, Target associates the Infringing Product with skateboarding to further associate itself and its products with Vans and trade on Vans' history and its reputation for authenticity in skateboarding and street culture.   Target's YouTube Channel includes videos promoting the Wild Fable line, examples of which can be found at www.youtube.com/user/Target/.   The videos have a skateboarding theme, and include models wearing the Infringing

17
COMPLAINT

Product.   At least one model in the video is depicted wearing the Infringing Product while on a skateboard.   Indeed, particularly in the context of the promotional video, consumers are likely to believe that the model is wearing authentic Vans shoes.



41.   Consumers readily associate the Infringing Product with Vans.   For example, Target's own customers refer to the Infringing Product as "fake Vans" on the Target website in the Ratings and Reviews section.   For example:

**My feet and my wallet are happy!**

(would recommend)

⭐⭐⭐⭐⭐ nanersammich—1 month ago

Cool fake vans at a fraction of the price without compromising quality! For cheap shoes, I was surprised that I didn't even have to break them in for them to be comfortable.  see more

Do you find this helpful?
yes (0) / no (0) / report

⭐⭐⭐⭐⭐ El Ramirez—2 months ago

verified purchaser

I love my fake Vans! I read some reviews that said to go a 1/2 a size down but for me that wasn't a good fit. Getting my size was well, perfect!

Do you find this helpful?
yes (0) / no (0) / report

18
COMPLAINT

660263.doc

(emphasis added).

42.   Furthermore, consumers will likely initially think that the Infringing Product is an authentic Old Skool Shoe. For example, in a video available at https://youtu.be/E0GVvaWhF_Q, a fashion blogger not only notes that the Infringing Product looks like an authentic Vans product and is a "Vans 'knock-off[s],'" but also indicates that she was initially attracted to the shoes because they looked like Vans ("I looked and I was like, oh hey babe, knockoffs, and then I was like $15, you're coming home with me."). Therefore, the Infringing Product is also likely to cause initial interest confusion.

43.   Defendant Target has a long and prominent history of collaborating with independent fashion labels that have cachet with Target's customers. For example, within the past ten years Target has collaborated with a range of high-end and popular labels including Missoni, Jason Wu, Toms, Lilly Pulitzer, and Hunter. Because Target has established a reputation with consumers for developing collaborations with popular brands that include shoes, accessories, and clothing, consumers will likely make the mistaken assumption that the Infringing Product is in fact the result of a collaboration between Target and Vans.

44.   The Infringing Product is also likely to cause confusion under post-sale conditions, as potential consumers observing Target customers wearing the Infringing Product will likely mistakenly believe the Infringing Product is sold by or associated with Vans. Indeed, as the Target promotional discussed in Paragraph 40 demonstrates, the Infringing Product is indistinguishable for authentic Vans' Old Skool Shoes in typical post-sale conditions.

45.   Defendants are well aware of the extraordinary fame and strength of the Vans Trademarks and Trade Dress and the incalculable goodwill embodied therein, and Defendants, upon information and belief, were familiar with the Vans Trademarks and Trade Dress when Defendants created, imported, and began advertising and selling the Infringing Product.

660263.doc

46.    Upon information and belief, Defendants' infringement is intended to trade on and misappropriate Vans' well established reputation and extensive goodwill with Defendants' target audience of millennial and Gen-Z shoppers.

47.    Upon information and belief, Defendants' copied the Vans Trademarks and Trade Dress not only because of the Old Skool Shoe's extreme popularity among Defendants' target consumers, but also to misappropriate Vans' iconic reputation and cachet in pop-culture and street culture to lend unwarranted and instant credibility to its Wild Fable line of apparel and accessories upon its launch.

48.    Defendants knowingly, willfully, and intentionally adopted and used a substantially indistinguishable and confusingly similar imitation of the Vans Trademarks and Trade Dress.

49.    Upon information and belief, Defendants intentionally designed and manufactured the Infringing Product to mislead and deceive consumers into believing it was manufactured, sold, authorized, or licensed by Vans.

50.    Upon information and belief, the Infringing Product is made of cheaper and inferior quality materials than genuine Vans products.

51.    Because the Infringing Product is a confusingly similar imitation of Vans' footwear products and deliberately makes use of and mimics the Vans Trademarks and Trade Dress, and because consumers readily associate the Vans Trademarks and Trade Dress with Vans, both prospective and current consumers encountering the Infringing Product are likely to be confused as to its source, including at point of sale or under pre- and post-sale circumstances, and will believe that the Infringing Product is designed, licensed, or authorized by Vans. This likelihood of confusion and damage to Vans' reputation as a result of the Infringing Product's inferior quality and cheaper construction is another source of damage.

52.    Upon information and belief, Defendants intend to continue to design, manufacture, advertise, promote, sell, or offer for sale the Infringing Product

20
COMPLAINT

660263.doc

1    unless otherwise restrained.

2

3                    **FIRST CLAIM FOR RELIEF**

4                   **(Federal Trade Dress Infringement)**

5        53.    Vans repeats and incorporates by reference the allegations of each of the

6    preceding paragraphs.

7        54.    Vans has used the Old Skool Trade Dress long prior to Defendants'

8    marketing, distribution, offer for sale and sale of the Infringing Product.

9        55.    Defendants' use of confusingly similar imitations of the Old Skool Trade

10   Dress is likely to cause confusion, deception, and mistake by creating the false and

11   misleading impression that Defendants' good is manufactured or distributed by

12   Vans, or is associated or connected with Vans, or has the sponsorship,

13   endorsement, or approval of Vans.

14       56.    Defendants have used marks confusingly similar to the Old Skool Trade

15   Dress in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and,

16   unless enjoined by this court, will continue to cause a likelihood of confusion and

17   deception among members of the trade and purchasing public and injury to Vans'

18   goodwill and reputation as symbolized by the Old Skool Trade Dress, for which

19   Vans has no adequate remedy at law.

20       57.    Defendants' actions demonstrate an intentional, willful, and malicious

21   intent to trade on the goodwill associated with the Old Skool Trade Dress Trade

22   Dress to Vans' great and irreparable harm.

23       58.    Defendants have caused and are likely to continue causing substantial

24   injury to the public and to Vans, and Vans is entitled to injunctive relief and to

25   recover Defendants' profits, actual damages, enhanced profits and damages, costs,

26   and reasonably attorneys' fees under 15 U.S.C. §§ 1116, and 1117.

27

28

660263.doc

1

2

## SECOND CLAIM FOR RELIEF

## (Federal Trademark Infringement)

3

4

59.    Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

5

6

7

60.    Vans has used and registered the Side Stripe Trademark long prior to Defendants' marketing, distribution, offer for sale and sale of the Infringing Product.

8

9

10

11

12

61.    Defendants' use of confusingly similar imitations of the Side Stripe Trademark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' Infringing Product is manufactured or distributed by Vans, or is associated or connected with Vans, or has the sponsorship, endorsement, or approval of Vans.

13

14

15

16

17

18

62.    Defendants have used marks confusingly similar to the Side Stripe Trademark in violation of 15 U.S.C. §§ 1114 and 1125(a). Defendants' activities have caused and, unless enjoined by this court, will continue to cause a likelihood of confusion and deception among members of the trade and purchasing public and injury to Vans' goodwill and reputation as symbolized by the Side Stripe Trademark, for which Vans has no adequate remedy at law.

19

20

21

63.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Side Stripe Trademark to Vans' great and irreparable harm.

22

23

24

25

64.    Defendants have caused and are likely to continue causing substantial injury to the public and to Vans, and Vans is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonably attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

26

27

28

660263.doc

1

2

## THIRD CLAIM FOR RELIEF

## (Federal Unfair Competition)

3

4

65.    Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

5

6

7

8

9

10

66.    Defendants' use of confusingly similar imitations of the Vans Trademarks and Trade Dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' Infringing Product manufactured or distributed by Vans, or is affiliated, connected, or associated with Vans, or has the sponsorship, endorsement, or approval of Vans.

11

12

13

14

15

16

67.    Defendants have made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and purchasing public and injury to Vans' goodwill and reputation as symbolized by the Vans Trademarks and Trade Dress, for which Vans has no adequate remedy at law.

17

18

19

68.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Vans Trademarks and Trade Dress to Vans' great and irreparable harm.

20

21

22

23

69.    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Vans. Vans is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

24

25

26

## FOURTH CLAIM FOR RELIEF

## (California Unfair and Deceptive Trade Practices)

27

28

70.    Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

23
COMPLAINT

71.     Defendants are intentionally and in bad faith passing off their Infringing Product as a product of Vans, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants' Infringing Product, causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Vans, and otherwise damaging the public.

72.     Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statute of California Business and Professions Code §17200.

73.     Defendants' deceptive trade practices have caused and are likely to cause substantial injury to the public and to Vans. Vans is therefore entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement and Unfair Competition)

74.     Vans repeats and incorporates by reference the allegations of each of the preceding paragraphs.

75.     Due to its over forty years of continuous use, Vans owns valid and enforceable common law rights in the Vans Trademarks and Trade Dress.

76.     Defendants' acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Vans. Vans has no adequate remedy at law for this injury.

77.     Upon information and belief, Defendants acted with full knowledge of Vans' use of, and common law rights in, the Vans Trademarks and Trade Dress and without regard to the likelihood of confusion of the public created by Defendants' activities.

24
COMPLAINT

78.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Vans Trademarks and Trade Dress to the great and irreparable injury of Vans.

79.    As a result of Defendants' acts, Vans has been damaged in an amount not yet determined or ascertainable. At a minimum, however, Vans is entitled to injunctive relief, and to an accounting of Vans' profits, damages, and costs. Further, in light of the deliberately fraudulent and malicious use of confusingly similar imitations of Vans Trademarks and Trade Dress, and the need to deter Defendants from engaging in similar conduct in the future, Vans is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Vans prays that:

1.    Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other person acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined both preliminarily and permanently from:

   a.  using the Vans Trademarks and Trade Dress or any copy, reproduction, colorable imitation, or simulation of the Vans Trademarks and Trade Dress on or in connection with Defendants' goods;

   b.  using any trademark, name, logo, design, or source designation of any kind or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Vans' trademarks, trade dress, names, or logs, including, but not limited to, the Vans Trademarks and Trade Dress;

   c.  using any trademark, name, logo, design, or source designation of any

kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Vans, or are sponsored or authorized by Vans, or are in any way connected or related to Vans;

d. passing off, palming off, or assisting in passing off or palming off Defendants' Infringing Product as that of Vans, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

e. manufacturing, distributing, importing, advertising, promoting, offering for sale, or selling the Infringing Product or other similar goods.

2.     Defendants be ordered to cease offering for sale, marketing, promoting, and selling, to remove from their retail stores, and to recall all products under or bearing a confusingly similar imitation of the Vans Trademarks and Trade Dress, including, but not limited to, the Infringing Product, which is in Defendants' possession or has been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

3.     Defendants be ordered to deliver up for impoundment and for destruction all footwear, apparel, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationary, or other materials in the possession, custody or under the control of Defendants that are found to adopt or infringe any of Vans trademarks or trade dress, including, but not limited to, the Vans Trademarks and Trade Dress, or that otherwise unfairly compete with Vans and its products;

4.     Defendants be compelled to account to Vans for any and all profits derived by Defendants from the sale or distribution of Infringing Product as

26
COMPLAINT

described in this Complaint;

5.     Vans be awarded all damages caused by the acts forming the basis of this Complaint;

6.     Based on Defendants' knowing and intentional use of the Vans Trademarks and Trade Dress and confusingly similar imitations of the Vans Trademarks and Trade Dress, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a) and (b).

7.     Defendants be required to pay to Vans the costs and reasonable attorneys' fees incurred by Vans in this action pursuant to 15 U.S.C. § 117(a) and California Business and Professions Code §17200;

8.     Vans be awarded prejudgment and post-judgment interest on all monetary awards; and

9.     Vans have such other and further relief as this Court may deem just.


DATED: December 20, 2018          **VANS, INC. and VF OUTDOOR, LLC**

                                  ***By their Attorneys***


                          By:    /s/Greg Nylen
                                 Greg Nylen
                                 Kevin Abbott
                                 LOBB & PLEWE, LLP
                                 4160 Temescal Canyon Rd., Suite 202
                                 Corona, CA  92883

                                 James Donoian (*pro hac vice* forthcoming)
                                 Aya   Cieslak-Tochigi   (*pro   hac   vice*
                                 forthcoming)
                                 McCarter & English, LLP
                                 825 Eighth Avenue, 31st Floor
                                 New York, NY 10019

                                 27
                                 COMPLAINT

660263.doc

Keith Toms (*pro hac vice* forthcoming)
Quincy Kayton (*pro hac vice* forthcoming)
McCarter & English, LLP
265 Franklin St.
Boston, MA 02140

Aaron Y. Silverstein
Saunders & Silverstein LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913

COMPLAINT

660263.doc

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule 38(b), Vans hereby demands a jury trial on all issues so triable that are raised by this Complaint.

DATED: December 20, 2018          **VANS, INC. and VF OUTDOOR, LLC**

                                   ***By their Attorneys***


By:    /s/ Greg Nylen
       Greg Nylen
       Kevin Abbott
       LOBB & PLEWE, LLP
       4160 Temescal Canyon Rd., Suite 202
       Corona, CA  92883

       James Donoian (*pro hac vice pending*)
       Aya Cieslak-Tochigi (*pro hac vice forthcoming*)
       McCarter & English, LLP
       825 Eighth Avenue, 31st Floor
       New York, NY 10019

       Keith Toms (*pro hac vice pending*)
       Quincy Kayton (*pro hac vice pending*)
       McCarter & English, LLP
       265 Franklin St.
       Boston, MA 02140

       Aaron Y. Silverstein (*pro hac vice pending*)
       Saunders & Silverstein LLP
       14 Cedar Street, Suite 224
       Amesbury, MA 01913

660263.doc

# EXHIBIT A

EXHIBIT A

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**Reg. No. 2,177,772**

## United States Patent and Trademark Office

Registered Aug. 4, 1998

### TRADEMARK
### PRINCIPAL REGISTER



VANS, INC. (DELAWARE CORPORATION)
2095 BATAVIA STREET
ORANGE, CA 926653101

FOR: FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST   USE   0-0-1971;   IN   COMMERCE 0-0-1971.

THE MATTER SHOWN BY THE DOTTED LINES IS NOT PART OF THE MARK AND SERVES ONLY TO SHOW THE POSITION OF THE MARK.
SEC. 2(F).

SER. NO. 75-091,541, FILED 4-19-1996.

KIM SAITO, EXAMINING ATTORNEY

31

EXHIBIT A

# EXHIBIT B

EXHIBIT B

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 2,172,482

Registered July 14, 1998

## TRADEMARK
## PRINCIPAL REGISTER



VANS, INC. (DELAWARE CORPORATION)
2095 BATAVIA
ORANGE, CA 92865

FOR: FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 0–0–1971; IN COMMERCE 0–0–1971.

THE LINING IS FOR SHADING PURPOSES ONLY AND DOES NOT INDICATE COLOR.

THE MARK CONSISTS OF THE DESIGN ON THE SIDE OF THE SHOE. THE MATTER SHOWN BY THE DOTTED LINE IS NOT PART OF THE MARK AND SERVES ONLY TO SHOW THE POSITION OF THE MARK.

SEC. 2(F).

SER. NO. 75–229,184, FILED 1–22–1997.

KIM SAITO, EXAMINING ATTORNEY

EXHIBIT B

# EXHIBIT C

EXHIBIT C

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

Reg. No. 2,170,961

## United States Patent and Trademark Office

Registered July 7, 1998

## TRADEMARK
### PRINCIPAL REGISTER

VANS, INC. (DELAWARE CORPORATION)
2095 BATAVIA
ORANGE, CA 92865

FOR: FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 0-0-1971; IN COMMERCE 0-0-1971.

THE STIPPLING IS FOR SHADING PURPOSES ONLY AND DOES NOT INDICATE COLOR.

THE MATTER SHOWN BY THE DOTTED LINE IS NOT PART OF THE MARK AND SERVES ONLY TO SHOW THE POSITION OF THE MARK.

SEC. 2(F).

SER. NO. 75-229,182, FILED 1-22-1997.

KIM SAITO, EXAMINING ATTORNEY

EXHIBIT C

# EXHIBIT D

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,442,122**

**Registered Dec. 3, 2013**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

VANS, INC. (DELAWARE CORPORATION)
6550 KATELLA AVE
CYPRESS, CA 90630

FOR: CLOTHING, NAMELY, T-SHIRTS, SHIRTS, SWEATSHIRTS, PANTS, SHORTS, DENIMS, SWEATER, JACKETS, BELTS, BOXERS, SOCKS, SCARVES, UNDERWEAR AND SWIM-WEAR; HEADGEAR, NAMELY, HATS, CAPS AND BEANIES , IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 0-0-1971; IN COMMERCE 0-0-1971.

OWNER OF U.S. REG. NOS. 2,170,961, 2,172,482, AND 3,906,529.

THE MARK CONSISTS OF A WAVE LINE.

SER. NO. 85-361,562, FILED 7-1-2011.

KATHRYN COWARD, EXAMINING ATTORNEY

Commissioner for Trademarks of the
United States Patent and Trademark Office

EXHIBIT D

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the
USPTO website for further information.   With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

Page: 2 / RN # 4,442,122

EXHIBIT D